## EXETER *v.* RICHMOND.

A wife follows the settlement of her husband, whether it be in this state or in any of the United States, and thereby loses her former settlement in a town of this state; and if she afterwards return to this state, cannot, by virtue of ch. 51, sect. 13, of the Revised Statutes, be removed as a pauper, to the town of her former settlement in this state, — that not being the town to which she belongs, or in which she was last legally settled.

APPEAL from an order of the town council of the town of Richmond, ordering the removal of one Sally Bray and her infant to the town of Exeter, as paupers chargeable to said town.

The appeal was submitted to the court upon the following agreed statement of facts : " It is admitted that the last legal place of settlement of the paupers, in this state, was in Exeter; that Lyman Rathbun, the first husband of the pauper, Sally Bray, purchased a tract of land in Sterling, Connecticut, on the 26th day of March, 1838, of the value of about $1088, and held the same unencumbered for four years, the deed being recorded; that he lived thereon for three years; was, on the 29th day of March, 1841, admitted an elector of the state of Con-necticut in said town of Sterling, and as such, took the oath required by law; and the respondent claims, that by the stat-utes of Connecticut, the said Rathbun gained a settlement in said Sterling, and that his widow should have been removed, if at all, to that town, and not to Exeter. It is further admitted, that after the decease of said Rathbun, his widow, Sally, mar-ried ———— Bray, an alien, who had no legal settlement in the United States."

*E. R. Potter*, for the town of Exeter.

13 *

, Chapter 51, § 13, of the Revised Statutes, cannot be intended to mean, that a pauper shall be removed to the town in this state where he was last settled, irrespective of any later settlement he may have gained in another state. Because, —

1st. It is contrary to the whole spirit of the pauper laws. They contemplate the pauper's gaining a settlement in another state as well as in this. (See cases of wife and child; Rev. Stats. ch. 49, § 1, pp. 1 & 2.) And a settlement here remains only until a new one is gained, without reference to where the new one is; and after gaining a new one in this, or another state, the old one is lost. Rev. Stats. ch. 49, § 2. In this case the wife followed the settlement of her husband, and now belongs to Sterling and not to Exeter.

2d. This case does not come within either of the provisions of ch. 51, § 13, of the Rev. Stats. The pauper did not *lawfully belong* in Exeter, nor was he *last legally settled* in Exeter. It is admitted he was last legally settled in Sterling.

3d. The case has been substantially decided in W. Greenwich *v.* Warwick, 4 R. I. Reports, 136 ; although this does not appear from the report to have been the exact question there controverted.

*Dixon,* for the town of Richmond.

The pauper was found in Richmond, and her last place of settlement in this state, was Exeter. *By the express direction* of the 13th section of ch. 51, of the Revised Statutes, she was to be removed to her last place of legal settlement within the state. Richmond complied with the statute by sending her to Exeter ; and, if she had acquired a settlement in Sterling, Connecticut, Exeter could have sent her there.

AMES, C. J. It is not questioned that Lyman Rathbun, the first husband of Sally Bray, the pauper, became, by residence and ownership of real estate in Sterling, Connecticut, a settled inhabitant of that town. As by the first rule of our canons of settlement, it is provided, that " a married woman shall always follow and have the settlement of her husband, if he has any settlement in this state, *or in any other of the United States,*" the pauper lost her settlement in Exeter, and gained, in lieu of it, a settlement with her husband in Sterling, Connecticut. Rev.

Stats. ch. 49, sect. 1, Rule 1st. The pauper had thus lost her settlement in Exeter, and the town council of Richmond had no more right to remove her thither than to any other town in the state.

It is a mistake to suppose that the 13th section of ch. 51 of the Revised Statutes, qualifies this result, by providing, that the pauper may be removed by the town to which he has become, or is likely to become chargeable, to the town to which " he lawfully belongs *within this state,* or in which he was last legally settled." This section, together with the sections immediately preceding and following it, prescribe the proceedings for the removal of paupers and the remedy for towns aggrieved by such removal; and, as the statute is necessarily confined in its operation to our own territory, the right of removal, under the statute, is very properly limited, by the language of the 13th section, to a removal to a town within this state. It must, nevertheless, by the same language, be the town to which the pauper " lawfully belongs," " or, in which he was last legally settled." As by the statement of facts submitted to us, it is apparent that this was not the town of Exeter, but of Sterling, Connecticut, a decree must be entered reversing the order of removal of the town of Richmond, with an allowance to the town of Exeter for all proper costs and charges consequent upon the order and its reversal.